KM

**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Joseph Lavance Smith,

Plaintiff,

v.

Charles L. Ryan, et al.,

Defendants.

No. CV 15-1278-PHX-DGC (DKD)

**ORDER**

Plaintiff Joseph Lavance Smith, who is confined in the Arizona State Prison Complex-Eyman (ASPC-Eyman), has filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed *In Forma Pauperis* (Doc. 2). The Court will order Defendants Musachio and Woods to answer Counts One and Two of the Complaint and will dismiss the remaining claims and Defendants without prejudice.

## I. Application to Proceed *In Forma Pauperis* and Filing Fee

Plaintiff's Application to Proceed *In Forma Pauperis* will be granted. 28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C. § 1915(b)(1). The Court will assess an initial partial filing fee of $4.50. The remainder of the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

**TERMPSREF**

**II. Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less

stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*)).

**III. Complaint**

Plaintiff names the following Defendants in his two-count Complaint: Arizona Department of Corrections (ADOC) Director Charles L. Ryan; "SD Handler" Correctional Officer II Musachio; Assistant Deputy Warden Woods; Correctional Officers II Godlevsky and Streadman; Northern Region Director Ron Credio; Unknown Nurse; Deputy Warden of Operations Lee; Unknown Facility Health Administrator at ASPC-Eyman; and Unknown Health Services Regional Operations Director at ASPC-Eyman.

In Count One, Plaintiff alleges his Eighth Amendment rights were violated when Defendant Musachio used excessive force on him. Plaintiff claims that on July 15, 2013, he was returning to his cell when Defendant Musachio and his canine exited the control room passage. Plaintiff states that as he was walking through the passage, Defendant Musachio and the canine "closed in on the Plaintiff, at which time the Plaintiff politely asked [Defendant Musachio] to keep the dog from behind him, for his fear of its closeness and being bit." Plaintiff claims Defendant Musachio came closer and told Plaintiff to "shut the fuck up and hurry up and get to his cell." Plaintiff went to his assigned cell as directed, but claims "the verbal assault initiated by CO 2 Musachio continued as both parties hurled profanities." Plaintiff was then locked in his assigned cell.

Plaintiff claims Defendant Musachio left Plaintiff's cell for two to four minutes and then returned and resumed his verbal abuse. Plaintiff alleges that Defendant Musachio then yelled to Defendant Streadman to open Plaintiff's cell door. Defendant Musachio then ordered Plaintiff to close the cell door behind him. Plaintiff complied. Plaintiff claims "the argument continued as CO 2 Musachio ordered the Plaintiff to come closer, saying 'you want to fight motherfucker, come on.'" Plaintiff claims he refused

the officer's challenge and took a non-threatening posture against the wall directly next to his cell.

Plaintiff claims that Defendant Musachio continued with his hostilities while removing the canine's muzzles and leash, and threw the restraints in the general direction of Defendant Godlevsky, who was about 10 feet away and looking on. Plaintiff asked Defendant Godlevsky to call a sergeant, but she did not respond.

Defendant Musachio ordered Plaintiff to the floor. Plaintiff states he "refused and remained in the same non-threatening posture against the wall, out of fear of being bit." An unknown officer approached and repeated the order and Plaintiff again refused. The officer then sprayed Plaintiff with a chemical agent, and Defendant Musachio took hold of Plaintiff's right wrist, and pinned Plaintiff to the wall. Defendant Musachio then shook Plaintiff's right arm and the unleashed canine attacked Plaintiff and bit into Plaintiff's right arm. Plaintiff states that the canine shook his arm two or three times, causing intense pain, before Defendant Musachio commanded the canine to release Plaintiff. The canine released and then immediately bit Plaintiff's right hip and groin region before releasing again. Plaintiff was then taken to the floor and put in restraints.

Plaintiff alleges Defendant Musachio's behavior constitutes excessive force because Plaintiff was locked in his cell, and posed no danger to staff or other inmates, before the physical confrontation with the dog began. Plaintiff further contends Defendant Musachio's actions violated ADOC policy relating to canines and were "malicious and sadistically designed for the purpose of causing harm, out of and for retaliation all of which horrific physical and psychological trauma."

Plaintiff claims Defendant Godlevsky violated his constitutional rights by failing to intervene on Plaintiff's behalf. Plaintiff alleges Defendant Streadman violated his constitutional rights by "allowing further access to the Plaintiff and not intervening on the Plaintiff's behalf."

Plaintiff claims Defendants Woods, Lee, Credio, and Ryan violated his constitutional rights because they are responsible for the actions of Defendants Musachio, Godlevsky, and Streadman.

In Count Two, Plaintiff alleges his Eighth Amendment rights were violated when he was denied adequate medical treatment for his wounds resulting from the dog bites. Plaintiff claims that after the incident, he was taken to medical where Defendant Unknown Nurse took photos and measured the diameter of Plaintiff's wounds. Defendant Nurse informed Defendant Woods "that the Plaintiff would need to be taken for outside medical care because she wasn't equipped to handle the sutures necessary for the injuries–the nurse stated ar[r]angements had been made." Plaintiff claims Defendant Woods had a brief conference with Defendant Lee and then "directed the nurse to clean and gauze the Plaintiff's wounds because 'they're not that bad.'" Plaintiff claims that as a result of not receiving the proper treatment, his wounds bled for seven days.

Plaintiff claims that Defendant Woods violated his constitutional rights by refusing Plaintiff "a community standard of health care" and by "abusing her authority to personally direct the medical care given, which resulted in unnecessary disfigurement/scarring, pain and suffering." Plaintiff further claims Defendant Unknown Nurse violated his constitutional rights by "not providing health care substantial to the injuries (i.e. sutures or [tetanus] shot)."

Plaintiff alleges Defendant Lee violated his constitutional rights by "not maintaining control of the situation, not intervening when he witness[ed] A.D.W. Woods overstepping her authority." Plaintiff contends Defendants Facility Health Administrator and Health Services Regional Operations Director violated his constitutional rights because they are responsible for the actions of the Rynning Unit medical staff.

Plaintiff seeks monetary damages.

## IV. Failure to State a Claim

### A. Count One

#### 1. Failure to Intervene

An Eighth Amendment claim requires a sufficiently culpable state of mind by the Defendants, known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Id.* at 835. To state a claim of deliberate indifference, plaintiffs must meet a two-part test. "First, the alleged constitutional deprivation must be, objectively, sufficiently serious"; and the "official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotations omitted). Second, the prison official must have a "sufficiently culpable state of mind," i.e., he must act with "deliberate indifference to inmate health or safety." *Id.* (internal quotations omitted). In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

Prison officials "can violate a prisoner's Eighth Amendment rights by failing to intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). To be liable for failing to take reasonable steps to protect the inmate from harm from another officer's use of excessive force, the defendant must have had a "realistic opportunity" to prevent the attack. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994); *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995).

Plaintiff has not alleged sufficient facts to demonstrate that Defendants Godlevsky or Streadman were both actually aware that Defendant Musachio was using excessive force on Plaintiff, i.e. that both Defendants believed the force being used was excessive, and that they had a realistic opportunity to intervene. To the extent Plaintiff claims Defendant Streadman allowed Defendant Musachio into Plaintiff's cell, Plaintiff has not

alleged Defendant Streadman did so while also being aware Defendant Musachio intended to use excessive force on Plaintiff. With respect to Defendant Godlevsky, Plaintiff has alleged only that that she was nearby during the incident; he has not alleged facts showing she had a realistic opportunity to intervene. Accordingly, Plaintiff's claims against these Defendants will be dismissed.

**2. Defendants Woods, Lee, Credio, and Ryan**

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976). There is no *respondeat superior* liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff alleges only that Defendants Woods, Lee, Credio, and Ryan are liable as supervisors of Defendant Musachio. Plaintiff has not alleged that these Defendants personally participated in a deprivation of Plaintiff's constitutional rights, were aware of a deprivation and failed to act, or formed policies that resulted in Plaintiff's injuries. Plaintiff has therefore failed to state a claim against Defendants Woods, Lee, Credio, and Ryan in Count One.

**B. Count Two**

Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious

medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of

"unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

**1. Defendant Unknown Nurse**

Plaintiff has not alleged facts showing that Defendant Unknown Nurse was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff states that Defendant Nurse informed Defendant Woods she did not have sufficient ability to suture Plaintiff's wounds and that she had arranged for Plaintiff to receive outside care, but that Defendant Woods overrode this decision. Plaintiff does not allege that Defendant Nurse had any authority to obtain outside care for Plaintiff after it was denied by Defendant Woods, and his facts indicate she treated the wounds as well as she was able to at the facility. Plaintiff has therefore failed to state a claim against Defendant Unknown Nurse.

**2. Defendants Lee, Facility Health Administrator, and Regional Operations Director**

With respect to Defendant Lee, Plaintiff alleges only that Defendant Lee failed to maintain control of the situation and failed to intervene to countermand Defendant Woods' instructions. Plaintiff's only factual allegations regarding Defendant Lee are that Defendant Lee and Defendant Woods had a brief conversation before Defendant Woods instructed the nurse not to send Plaintiff for outside treatment. Plaintiff does not describe the content of the conversation, does not allege that Defendant Lee was actually aware of the severity of Plaintiff's injuries, or allege that Defendant Lee participated in any way in the decision to treat Plaintiff at the facility. Plaintiff has failed to state a claim against Defendant Lee.

With respect to the Facility Health Administrator and the Regional Operations Director, Plaintiff alleges these Defendants are liable as the supervisors of medical staff. As noted above, there is no supervisory liability in § 1983. Plaintiff has therefore failed to state a claim against these Defendants.

## V. Claims for Which an Answer Will be Required

Liberally construed, Plaintiff has adequately stated an Eighth Amendment excessive force claim against Defendant Musachio in Count One and an Eighth Amendment medical claim against Defendant Woods in Count Two. The Court will require these Defendants to answer the Complaint.

## VI. Motion for Appointment of Counsel

O July 9, 2015, Plaintiff filed a Motion for Appointment of Counsel (Doc. 4). There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings *in forma pauperis*, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). Appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims *pro se* in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff is in no different position than many *pro se* prisoner litigants. The Court will therefore deny without prejudice Plaintiff's Motion for Appointment of Counsel.

## VII. Warnings

### A. Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or

(2) file a *non*-prisoner application to proceed *in forma pauperis*. Failure to comply may result in dismissal of this action.

**B. Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C. Copies**

Because Plaintiff is currently confined in an Arizona Department of Corrections unit subject to General Order 14-17, Plaintiff is not required to serve Defendants with a copy of every document he files or to submit an additional copy of every filing for use by the Court, as would ordinarily be required by Federal Rule of Civil Procedure 5 and Local Rule of Civil Procedure 5.4. If Plaintiff is transferred to a unit other than one subject to General Order 14-17, he will be notified of the requirements for service and copies for the Court that are required for inmates whose cases are not subject to General Order 14-17.

**D. Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Plaintiff's Application to Proceed *In Forma Pauperis* (Doc. 2) is **granted**.

(2) As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $4.50.

(3) Plaintiff's Motion for Appointment of Counsel (Doc. 4) is **denied**.

(4) Defendants Ryan, Godlevsky, Streadman, Credio, Unknown Nurse, Lee, Unknown Facility Health Administrator, and Unknown Health Services Regional Operations Director are **dismissed** without prejudice.

(5) Defendants Musachio and Woods must answer Counts One and Two.

(6) The Clerk of Court must send Plaintiff this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Musachio and Woods.

(7) Plaintiff must complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(9) The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(10) The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not**

[1] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

**returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

(a) personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11) **A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(12) Defendants must answer the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(14) This matter is referred to Magistrate Judge David K. Duncan pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 10th day of August, 2015.

David G. Campbell
United States District Judge

**TERMPSREF**