SKC

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Lavance Smith,<br><br>Plaintiff,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>Defendants. | No.  CV 15-01278-PHX-DGC (DKD)<br><br>**ORDER** |

Plaintiff Joseph Lavance Smith, who is currently confined in the Arizona State Prison Complex (ASPC)-Eyman in Florence, Arizona, brought this civil rights case pursuant to 42 U.S.C. § 1983.  Pending before the Court are the following seven motions:

1. Plaintiff's Motion for Preliminary Injunction against Charles L. Ryan (Doc. 30);
2. Plaintiff's Motion for Summary Judgment (Doc. 31);
3. Defendants Musacchio and Woods' Motion to Strike Plaintiff's Motion for Summary Judgement (Doc. 38.);
4. Plaintiff's Motion for Hearing under Rules 38 and 39 of the Federal Rules of Civil Procedure Regarding Summary Judgment (Doc. 45);
5. Plaintiff's Motion to Expedite a[] Hearing on Plaintiff's [Motion for] Preliminary Injunction (Doc. 52);
6. Defendants Musacchio and Woods' Motion for Summary Judgment [for] Failure to Exhaust Administrative Remedies (Doc. 54); and

7. Defendants Musacchio and Woods' Cross Motion for Summary Judgment (Doc. 63).

The Court will grant Defendants Musacchio and Woods' (hereinafter, "Defendants") Motion for Summary Judgment for Failure to Exhaust Administrative Remedies and will dismiss this action without prejudice. The Court will deny the remaining Motions as moot or for lack of jurisdiction as set forth in this Order.

**I.   Background.**

In his two-count complaint, Smith asserts Eighth Amendment excessive use of force claims and Eighth Amendment medical care claims against Arizona Department of Corrections (ADC) Director Charles L. Ryan, ASPC-Eyman Deputy Warden Woods, a number of other prison administrators and correctional officers (COs), and a prison nurse. (Doc. 1.) Smith's claims arise from injuries he allegedly suffered from a July 15, 2013 incident at ASPC-Eyman, in which he claims Defendant CO II Musacchio verbally and physically assaulted him outside his cell and Musacchio's canine attacked him while other COs watched and failed to intervene. (Doc. 1 at 5-9.)

In Count One, Smith alleges that Musacchio unmuzzled his canine to allow it to attack Smith, and the dog bit into Smith's right arm, right hip, and groin, causing injuries. (*Id.* at 6-8.) In Count Two, Smith alleges that when he was brought to medical after this incident, an unidentified nurse stated he would need to be taken for outside medical care because she was not equipped to provide the sutures necessary to treat his wounds, but Defendant Woods directed the nurse to clean and gauze the wounds instead, stating "they're not that bad." (*Id.* at 10-11.) Smith alleges that, as a result, his wounds continued to bleed for seven days, causing him to suffer "unnecessary disfigurement/scarring, pain[,] and suffering." (*Id.* at 11.) On screening under 28 U.S.C. § 1915A(a), the Court determined that Smith stated claims in Count One against Musacchio and Count Two against Woods and directed these Defendants to answer the claims against them. (Doc. 6.) The Court dismissed the remaining claims and Defendants. (*Id.*)

**II.   Defendants' Motion for Summary Judgment for Failure to Exhaust**

Because Defendants move for summary judgment on failure to exhaust grounds, and the failure to exhaust administrative remedies, if proven, would preclude Smith from bringing his claims, the Court will address this issue first. Exhaustion is a "judicial administration" issue that should be addressed early in the proceedings. *Albino v. Baca*, 747 F.3d 1162, 1169-70 (9th Cir. 2014) ("if feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation"); *see, also*, *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 536 (7th Cir. 1999) (Judges must resolve the exhaustion question before turning to any other issue in the suit).

**A.   Exhaustion Legal Standard**

Under the Prison Litigation Reform Act (PLRA), a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino*, 747 F.3d at 1172 ; *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the

undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

### B. Facts Relevant to ADC's Administrative Grievance Procedures.[1]

ADC has an administrative grievance system for inmates to bring complaints about any aspect of institutional life, except for classification or disciplinary determinations, which have their own, independent appeal processes. (Doc. 55 (Defendants' Statement of Facts) ¶¶ 2-4.) ADC's grievance procedures are set forth in Department Order (DO) 802, which was in effect at all relevant times in this action. (*Id.* ¶ 2.) A copy of this policy is kept in each prison unit's inmate resource library, and inmates receive verbal and written instructions on how to use the inmate grievance system at the start of their incarceration and each time they are transferred to a different prison unit. (*Id.* ¶ 5.) Inmates may also seek assistance using the prison grievance system from their assigned counselors or CO IIIs. (*Id.*) DO 802 § 01.1.5 informs inmates that they are required, under the PLRA, to completely exhaust ADC's administrative grievance processes before filing a lawsuit. (Doc. 55-1 at 11.)[2]

For non-medical grievances, ADC has a four-tiered review process, which includes an informal resolution stage, a formal resolution stage, and two appeal stages. (Doc. 55 ¶ 8.) At the informal resolution stage, an inmate must attempt to resolve his or her issue directly with the responsible staff member(s) or by filing an Informal Complaint Resolution (Form 802-11) with his or her unit CO III within 10 days of the incident being grieved. (*Id.* ¶ 8(a).) If unable to resolve the issue informally, the inmate has 5 days

---

[1] The facts pertaining to exhaustion are drawn from Defendants' Statement of Facts and supporting exhibits. (Docs. 55, 55-1.) Smith did not file a response to Defendants' motion or a separate or controverting statement of facts as he was instructed to do pursuant to Federal Rule 56 and Local Rule 56.1. (*See* Doc. 59.) The Court will therefore deem Defendants' facts undisputed unless they materially conflict with other evidence on record or with facts alleged in Plaintiff's verified complaint to the extent these facts are based on personal knowledge. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (allegations in a pro se plaintiff's pleadings must be considered as evidence in opposition to summary judgment where the contentions are based on personal knowledge and attested to under penalty of perjury.)

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

from the unsatisfactory response to file a Formal Grievance (Form 802-1) with the Deputy Warden via the inmate's unit CO IV Grievance Coordinator. (*Id.* ¶ 8(b).) If the inmate is unsatisfied with the Deputy Warden's response, the inmate has 5 days to submit an Inmate Grievance Appeal (Form 802-3) to the Warden. (*Id.* ¶ 8(c).) If the inmate is not satisfied with the response from the Warden, he or she has 5 days to submit a final appeal to the Director. (*Id.* ¶ 8(d).) (*See* Doc. 55-1 at 12-13 (DO 802 §§ 02, 03, 05, 07).)

For medical grievances, ADC has a three-tiered review process, which includes an informal resolution stage, a formal resolution stage, and an appeal stage. (Doc. 55 ¶ 9.) Formal Grievances on medical issues are forwarded by the inmate's CO IV Grievance Coordinator to the Contract Health Site Manager rather than to the Warden. (Doc. 55-1 at 13 (DO 802 § 04); Doc. 55-1 at 14 (DO 802 § 05.1.6).) If the inmate is unsatisfied with the response of the Contract Health Site Manager, the inmate may appeal to the ADC Director. (Doc. 55 ¶ 9(c).) At this stage, the CO IV must forward the inmate's Appeal to the Health Services Monitoring Bureau to investigate the issue and prepare a response for the Director. (*Id.*) The decision of the Director or his or her designee regarding the issue is final. (*Id.*)

Each unit's CO IV Grievance Coordinator must keep a log of all grievances filed within the unit, including the dates that the grievances and appeals are received and answered. (Doc. 55 ¶ 6.) If an inmate's grievance and grievance appeals are denied, and the inmate exhausts his or her administrative remedies by appealing to the Director, a record of the appeal is kept in the Grievance Appeal Log and the Grievance Appeal File, which are both maintained at ADC's Central Office. (*Id.* ¶ 10.)

### B. Facts Relevant to Exhaustion.

From July 15, 2013 (the date of the alleged excessive use of force incident) until the present, Smith has been housed for varying periods of time at the Rynning, SMU I, Browning, and Meadows Units. (Doc. 55 ¶¶ 15, 18, 20, 22.) The CO IV Grievance Coordinators for each of these units reviewed their unit logs showing the informal complaint resolutions, grievances, and grievance appeals filed during Smith's time in

1  their respective units to determine if Smith filed any grievances pertaining to his claims
2  for excessive use of force and inadequate medical care. (*Id.*) The reviews of these logs
3  revealed that Smith filed a single grievance while at the Rynning Unit on December 26,
4  2013 (*id.* ¶ 16), and filed no other grievances or grievance appeals between July 15, 2013
5  and the present. (*Id.* ¶¶ 17, 19, 21, 23.) ADC Hearing Officer Cheryl Dossett and ADC
6  Inmate Grievance Appeal Investigator Jennifer Livingston additionally reviewed the
7  ADC Central Office Grievance Appeal Log and Grievance Appeal File and found no
8  evidence that Smith filed any regular grievance appeals or medical grievance appeals
9  from July 15, 2013 through the present. (Doc. 55-1 at 7 (Dossett Decl.) ¶¶ 11-12;
10 Doc. 55-1 at 25 (Livingston Decl.) ¶¶ 11-12.)

11  Smith's December 26, 2013 grievance pertains to an August 15, 2013 disciplinary
12 hearing on charges filed against Smith stemming from the July 15, 2013 incident.
13 (Doc. 55-1 at 29 (Perez Decl.) ¶ 8; *see* Doc. 30 at 24 (Inmate Grievance).) In his
14 grievance, Smith sought to have his case involving "assault on staff" dismissed and to be
15 released from maximum custody. (Doc. 30 at 24.) This grievance was returned to Smith
16 by CO IV Perez as "unprocessed" on the ground that "Disciplinary Process has its own
17 appeals process" and Smith should have filed an appeal within 5 days of the final
18 disciplinary decision. (*Id.*)

19  In his form complaint, Smith filled in the boxes indicating that he submitted a
20 request for administrative relief as to his excessive use of force claims in Count One and
21 appealed his request to the highest level. (Doc. 1 at 5.) As to his medical care claims in
22 Count Two, Smith filled in the box indicating that he did not submit a request for
23 administrative relief or file an appeal because he "was ignorant to his rights/AD[]C
24 policy being violated until the research of this suit" and "both medical staff and officers
25 communicat[ed] that treatment received was proper and was not a grievable issue." (*Id.*
26 at 10, 12.) He stated that "he did not seek or know he had a right to administrative
27 remedies" as to his medical care claims. (*Id.* at 12.)
28  . . . .

- 6 -

### C. Analysis

Defendants have produced sufficient evidence, including declarations of the relevant unit CO IV Grievance Coordinators and ADC Central Office staff, to show that ADC has an administrative grievance system that was available to Smith at the time of the incidents alleged in the complaint, and that Smith failed to exhaust his administrative remedies for either of his claims. Smith did not respond to Defendants' motion or provide a separate or controverting statement of facts, and the scant evidence concerning exhaustion available in his verified complaint fails to create a genuine issue of material fact that he exhausted his administrative remedies.

As to Count One, merely filling in the boxes on the form complaint to indicate he grieved Musacchio's alleged excessive use of force to the highest level does not, in this case, create a genuine issue of fact that Smith exhausted his administrative remedies. As noted, the evidence Defendants provide from ADC's search of its grievance records shows only that Smith filed a grievance stemming from his disciplinary hearing following the June 15, 2013 incident and that this grievance was returned to him unprocessed. (*See* Doc. 55-1 at 29 ¶ 8; Doc. 30 at 24.) Even if the Court could construe this grievance as Smith's attempt to address the underlying use-of-force incident, there is no evidence Smith attempted to re-file this grievance after it was returned to him; nor is there any evidence he filed any other grievances or grievance appeals regarding Musacchio's alleged excessive use of force. In light of the evidence presented from multiple records searches showing Smith failed to do so, and absent any facts showing when, how, and to whom Smith purportedly grieved this issue, the Court cannot conclude on the basis of Smith's unelaborated markings on the form complaint that he exhausted his administrative remedies as to this claim.

As to Count Two, it is undisputed that Smith did not file any administrative grievances concerning his medical care claim against Woods. (*See* Doc. 1 at 10.) The only remaining issue is whether Smith's failure to exhaust should be excused because, as Smith asserts, (1) he was not aware that his rights had been violated until he researched

his claims for this action, and (2) both medical staff and officers conveyed to Smith that his medical care following the July 15, 2013 incident met acceptable standards and was therefore not grievable. (*See* Doc. 1 at 10, 12.)

With respect to the first issue, Smith's purported ignorance of the violation of his rights until he researched his claims in this action does not excuse his failure to exhaust his medical care claim against Woods. First, as Defendants point out, Smith's contention that he was unaware he had a grievable issue at the time Woods allegedly prevented him from receiving proper medical care is squarely at odds with his sworn statements in the complaint that Woods rejected the examining nurse's assessment that Smith needed sutures and, instead, instructed the nurse merely to clean and gauze Smith's wounds, causing Smith's injuries to bleed for seven days. (*See* Doc. 54 at 7; Doc. 1 at 10.) Under these facts, Smith could not have been unaware that he had an injury and an immediate cause to grieve Woods' actions. But even accepting that Smith did not realize he had grounds to file a grievance against Woods at the time, he clearly knew he had grounds to do so when he filed his Eighth Amendment medical care claim against her, and he was required under ADC's procedures and the PLRA to exhaust his administrative remedies before doing so. *See Woodford*, 548 U.S. at 85 (under the PLRA, "proper exhaustion" is mandatory and requires adherence to the relevant administrative procedural rules).

To the extent Smith appears to assert he only discovered he had cause to file a grievance against Woods after the required timeframe for doing so had passed, making the administrative grievance process effectively futile, this also is not an excuse for failing to comply with the PLRA's mandatory exhaustion requirements. *See Booth*, 532 U.S. at 741 n.6 ("we will not read futility or other exceptions into statutory exhaustion requirements"). For purposes of exhaustion, a prisoner must actually file a grievance and have it rejected; "he cannot anticipate that the process will be futile and bypass it." *Pogue v. Calvo*, No. C03-0803 VRW (PR), 2004 WL 443517 (N.D. Cal. Feb. 24, 2004). In summary, Smith's purported ignorance of his grounds for filing a grievance against

Woods until he researched his claims in this action does not excuse his failure to exhaust his administrative remedies before filing a claim against her.

With respect to the second issue—being told by prison staff that his issue was not grievable—an inmate may be excused from exhausting administrative remedies "once he has either received all 'available' remedies at an intermediate level of review or been reliably informed by an administrator that no remedies are available." *Brown*, 422 F.3d at 935. Here, however, Smith only vaguely asserts in the complaint that "medical staff" and "officers" communicated that the medical care he received for his injuries was sufficient and "not a grievable issue." (Doc. 1 at 12.) Even viewing these facts in a light most favorable to Smith, the Court cannot conclude, absent any additional facts about who conveyed this information and under what circumstances, that Smith was "reliably informed" by an administrator that no administrative remedies were available to him. The undisputed evidence shows that all inmates at ASPC-Eyman are instructed on ADC's administrative grievance procedures when they are admitted and each time they are transferred to a new unit, the grievance procedures are available in each unit's inmate resource library, and inmates can request assistance filing grievances from their assigned counselors or CO IIIs. Given these facts, Smith's mere statements in the complaint that he was told by medical staff and officers that he could not grieve his medical care issue are insufficient to show that ADC's grievance procedures were made effectively unavailable to him.

Because Defendants have carried their burden of showing that administrative remedies were available to Smith and he failed to exhaust them, and Smith has failed to show that he exhausted these remedies or that something in his particular case made those remedies effectively unavailable to him, the Court will grant Defendants' Motion for Summary Judgment for Failure to Exhaust and dismiss this action.

**III.    Remaining Motions**

In light of the Court's dismissal of this action for failure to exhaust, the Court will deny as moot Plaintiff's Motion for Summary Judgment (Doc. 31), Defendants' Motion

to Strike Plaintiff's Motion for Summary Judgment (Doc. 38.), Plaintiff's Motion for Hearing under Rules 38 and 39 of the Federal Rules of Civil Procedure Regarding Summary Judgment (Doc. 45); and Defendants' Cross Motion for Summary Judgment (Doc. 63).

The Court will additionally deny Plaintiff's Motion for Preliminary Injunction against Charles L. Ryan for lack of jurisdiction because Ryan was previously dismissed from this action, the relief sought in the Motion is not sufficiently related to the remaining claims in the Complaint,[3] and, even if Smith could show a connection between the relief he seeks and those claims, his failure to exhaust his administrative remedies as to those claims deprives the Court of jurisdiction over them. Because the Court will deny the Motion for Preliminary Injunction for lack of jurisdiction, it will deny as moot Plaintiff's Motion to Expedite a Hearing on his Motion for Preliminary Injunction.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Preliminary Injunction Against Charles L. Ryan (Doc. 30), Plaintiff's Motion for Summary Judgment (Doc. 31), Defendants Musacchio and Woods' Motion to Strike Plaintiff's Motion for Summary Judgement (Doc. 38.), Plaintiff's Motion for Hearing under Rules 38 and 39 of the Federal Rules of Civil Procedure Regarding Summary Judgment (Doc. 45), Plaintiff's Motion to Expedite a[] Hearing on Plaintiff's [Motion for] Preliminary Injunction (Doc. 52), Defendants Musacchio and Woods' Motion for Summary Judgment [for] Failure to Exhaust Administrative Remedies (Doc. 54), and Defendants Musacchio and Woods' Cross Motion for Summary Judgment (Doc. 63).

(2)     Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 54) is **granted**, and the action is **dismissed without prejudice**. The Clerk of Court must enter judgment accordingly.

---

[3] Smith seeks immediate release from maximum security and punitive damages against Ryan based on alleged constitutional violations stemming from Smith's August 15, 2013 disciplinary hearing. (Doc. 30 at 1-6.) This relief is beyond the scope of the excessive use of force and medical care claims alleged in the complaint.

- 10 -

1       (3)    Plaintiff's Motion for Preliminary Injunction against Charles L. Ryan (Doc. 30) is **denied** for lack of jurisdiction.

      (4)    Plaintiff's Motion for Summary Judgment (Doc. 31), Defendants Musacchio and Woods' Motion to Strike Plaintiff's Motion for Summary Judgement (Doc. 38.), Plaintiff's Motion for Hearing under Rules 38 and 39 of the Federal Rules of Civil Procedure Regarding Summary Judgment (Doc. 45), Plaintiff's Motion to Expedite a[] Hearing on Plaintiff's [Motion for] Preliminary Injunction (Doc. 52), and Defendants Musacchio and Woods' Cross Motion for Summary Judgment (Doc. 63) are **denied** as moot.

Dated this 16th day of December, 2016.

_David G. Campbell_
United States District Judge